**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Mohammad J.N.,

Petitioner,

v.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**
Civil File No. 26-01963 (MJD/DJF)

Markwayne Mullen, et al.,

Respondents.

Karen Venice Bryan, KB Law PLLC, Counsel for Petitioner.
David W. Fuller, Jesus Cruz Rodriguez, Assistant United States Attorneys, Counsel for Respondents.

## I. INTRODUCTION

This matter is before the Court on Petitioner Mohammad J.N.'s petition for writ of habeas corpus ("Pet."). (Doc. 2.) He seeks a writ of habeas corpus that, among other things, orders ICE (sometimes referred to as "Respondents") to immediately release him from custody and enjoins ICE from removing Petitioner to a third country without providing him written notice and a meaningful opportunity to be heard in reopened immigration removal proceedings.

## I. FACTS[1]

Petitioner was born in Bethlehem on the West Bank and his visa states that Petitioner's country of citizenship is Palestine, which Petitioner says renders him "stateless" because neither the United States nor various other countries recognize Palestine as a country. (Pet. ¶¶ 1, 44; Doc. 2-1.)[2] Petitioner came to the United States on or about November 27, 2013 on an F-1 student visa. (Pet. ¶ 1; Doc. 2-1.) On April 21, 2016, Petitioner's status was adjusted to "conditional resident" based on his marriage to a United States citizen. (Doc. 2-3 at 4.) However, on January 9, 2018, Petitioner's marriage was dissolved. (Van Der Vaart Decl. ¶ 8.)[3]

In January 2018, Petitioner was convicted of criminal sexual conduct – fifth degree – nonconsensual sexual contact in violation of Minn. Stat. § 609.3451 subdiv. 1(1), a gross misdemeanor. (Doc. 2-2; Van Der Vaart Decl. ¶ 7.) On January 11, 2018, following the conviction, Petitioner was issued a Notice to

---

[1] The Court will deem admitted any allegations in the Petition that are not contested by Respondents. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026) (citation omitted). Citations reflect where facts have not been taken from the Petition.

[2] Docs. 2-1 to 2-10 are attached to Petitioner's petition for writ of habeas corpus.

[3] James L. Van Der Vaart is a deportation officer with ICE. (Doc. 11 at 1.) He submitted his declaration in response to Petitioner's petition.

Appear ("NTA") charging him as removable under § 237(a)(2)(A)(iii) of the Immigration and Naturalization Act ("INA") and placed in full removal proceedings pursuant to § 240 of the INA. (Docs. 2-3; 2-4.) On June 7, 2018, an immigration judge issued an order of removal directing Petitioner's deportation to Palestine or, in the alternative, to Jordan. (Pet. ¶ 4.) Petitioner waived appeal, which rendered the removal order final on June 7, 2018. (Id.; Doc. 2-5.)

On December 19, 2018, DHS released Petitioner on an Order of Supervision because the agency had been unable to effect his "deportation or removal during the period prescribed by law." (Pet. ¶ 6; Docs. 2-6, 2-7.) Since his release, Petitioner has been compliant with all required ICE check-ins and other terms of his supervised release. (Pet. ¶ 7.) Petitioner has also remarried and has a United States-citizen wife, a United States-citizen child, and a pending I-30 Petition for Alien Relative filed by his spouse in 2023. (Id.; Doc. 2-10.)

On January 15, 2026, ICE arrested Petitioner in Minneapolis, Minnesota, but transferred him on the same day to El Paso Camp East Montana in El Paso, Texas due to a lack of bedspace in Minnesota. (Pet. ¶ 8; Van Der Vaart Decl. ¶ 12.) On January 23, Petitioner filed an Application for Stay of Removal with the St. Paul Field Office. (Pet. ¶ 9.) That application remains pending. (Id.) On

January 24, ICE issued Petitioner a Notice of Revocation of Release based on "changed circumstances" stating that "ICE has determined that you can be expeditiously removed from the United States" pursuant to 8 C.F.R. § 241.13. (Id. ¶ 10; Van Der Vaart Decl. ¶ 13.) "It was believed that country conditions changed and removal could be effected," although no further explanation is given. (Van Der Vaart Decl. ¶ 11.) Petitioner was never afforded an informal interview shortly after he was taken back into custody. (Reply at 2.) On March 19, 2026, Petitioner filed his petition for writ of habeas corpus. (Doc. 2.) On March 20, the Court ordered Petitioner returned to the District of Minnesota. (Doc. 5.) On March 24, Petitioner was transferred to ICE custody in St. Paul, Minnesota. (Doc. 12-1 (Ex. A to Rodriguez Mar. 24, 2026 Status Rpt.).) On March 12, 2026, the Minnesota Clemency Review Commission recommended that the Board of Pardons grant Petitioner's request for a pardon of his criminal conviction. (Pet. ¶ 11; Doc. 2-9.)

## III. DISCUSSION

### A. Habeas Corpus Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). District courts have jurisdiction to hear habeas challenges to

immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001). The Court has jurisdiction to hear this petition, which does not challenge the removal order but instead challenges the revocation of Petitioner's supervised release and the lawfulness of his re-detention. See, e.g., Garrison G. v. Bondi, —F. Supp. 3d.—, No. 26-CV-172 (JMB/DJF), 2026 WL 157677, at *2 (D. Minn. Jan. 17, 2026) ("Because Garrison G. does not challenge the removal order but instead challenges the revocation of his supervised release and his continued detention, the Court has jurisdiction to decide the questions raised about the lawfulness of his current re-detention."); see also Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal period detention.").

**B. Analysis**

Petitioner seeks relief on several grounds. However, because the Court finds ICE has violated 8 C.F.R. § 241.13 in re-detaining Petitioner, it does not reach all Petitioner's alternative grounds for relief. See —F. Supp. 3d.—, Faysal N. v. Noem, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026) (stating that when the court's decision on one of the petitioner's asserted theories for relief meant that the petitioner's detention was unlawful, the court did not need to reach the petitioner's alternative arguments).

### 1. Application of Zadvydas to Petitioner's Claims

Respondents assert that the "main thrust" of Petitioner's habeas petition is a Zadvydas challenge. (Doc. 10 at 6 (citing Zadvydas, 533 U.S. at 699-700).) Respondents note that while Zadvydas established that six months or fewer is presumptively constitutional, longer detention still comports with due process if there is a "significant likelihood of removal in the reasonably foreseeable future." (Id. at 6-7 (citing Zadvydas, 533 U.S. at 701).) Respondents argue that Petitioner's Zadvydas challenge is premature because "detainees awaiting removal from the United States may not file anticipatory habeas petitions prior to the six-month period having elapsed just in case their detention goes on for too long; instead, they must wait until the presumptively reasonable six-month period has passed to seek habeas relief." (Id. at 7 (quoting Brian B. v. Tollefson, No. 24-CV-2884 (NEB/ECW), 2024 WL 4029657, at *1 (D. Minn. July 26, 2024), R&R adopted, 2024 WL 4026259 (D. Minn. Sept. 3, 2024)) (cleaned up).)

This argument is misplaced because "Zadvydas does not apply to noncitizens subject to an order of supervision." Vang v. Bondi, No. 0:26-CV-1381, 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026). The Zadvydas decision focuses on the burden to prove that removal is unlikely; however, when an order

of supervision has been issued, "there has <u>already been</u> a determination that a noncitizen is not likely to be removed." <u>Id.</u> (emphasis in original). Instead, when, as here, an order of supervision has already been issued, there is an entirely different regulatory process that DHS must follow to revoke an order of supervision. <u>See id.</u> This process is codified at 8 C.F.R. § 241.13.

**2. Revocations of Supervision under 8 C.F.R. § 241.13**

An order of supervision can be revoked under 8 C.F.R. § 241.13 and a noncitizen can be re-detained under two circumstances: (1) the noncitizen violated any of the conditions of his release, or (2) ICE identifies "changed circumstances" that indicate a "significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i); <u>Roble v. Bondi</u>, 803 F. Supp. 3d 766, 771 (D. Minn. 2025) ("Once ICE releases a noncitizen on an Order of Supervision, ICE's ability to re-detain that noncitizen is constrained by its own regulations."). Upon revocation of an order of supervision, the noncitizen

> will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant

> likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3). "The government's failure to follow the regulations set forth in § 241.13 indicates an unlawful detention." Vang, 2026 WL 458195, at *2 (citations omitted).

**a) Notice of Revocation and Informal Interview**

The first problem with Petitioner's arrest and detention is that "Respondents failed to provide [Petitioner] with a Notice of Revocation of Release at the time of his arrest and did not give him an informal interview within a reasonable period of time following his arrest." Por M. v. Noem, No. 26-cv-1546 (PJS/DJF), 2026 WL 776865, at *3 (D. Minn. Mar. 9, 2026) (citing 8 C.F.R. § 241.13(i)(3)), R&R adopted in part sub nom. Por M. v. Sec'y of Homeland Sec., 2026 WL 776864 (D. Minn. Mar. 19, 2026); see also Sarail A. v. Bondi, 803 F. Supp. 3d 775, 781 (D. Minn. 2025) (adopting R&R) ("notification 'of the reasons for revocation' requires ICE to do more than state that circumstances have changed"). Petitioner was arrested without a warrant and whisked off to Texas within a matter of hours. He was then left in limbo for nine days before he was

served with what the parties apparently agree was a bare bones Notice of Revocation ("Notice").

"[A]s other Courts in this District and across the country have held, the issuance of a Notice of Revocation after detainment of a noncitizen on supervised release is impermissible." Lor v. Schilling, No. 26-CV-1672 (ECT/DLM), 2026 WL 765419, at *4 (D. Minn. Mar. 13, 2026) (citations omitted), R&R adopted sub nom. Kou L. v. Schilling, 2026 WL 770585 (D. Minn. Mar. 18, 2026). Although the Courts in this District have had to invoke this rule in many cases, ICE appears to have outdone itself here. Nine days seems to be an unprecedented time between arrest and service of notice of revocation. See, e.g., Si T.P. v. Noem, No. 26-CV-1445 (ECT/DJF), 2026 WL 575705, at *3 (D. Minn. Feb. 24, 2026) (six days between arrest and notice unreasonable) (citing M.S.L. v. Bostock, No. 6:25-cv-1204 (AA), 2025 WL 2430267, at *10, *12 (D. Or. Aug. 21, 2025) (two days between arrest and notice unreasonable), R&R adopted sub nom. Si P. v. Noem, 2026 WL 593436 (D. Minn. Mar. 2, 2026); Lor, 2026 WL 765419, at *4 (four days between arrest and notice violates regulations).

Moreover, the Court has not even seen the Notice. But for Petitioner's acknowledgment (Pet. ¶ 10), the Court would not even know the bare bones

Notice existed, despite that Respondents were ordered to include with their response "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of petitioner's detention in light of the issues raised in the habeas petition." (Doc. 5.) Even assuming the Court had the Notice in front of it, it supposedly states only there are "changed circumstances in your case" and that "ICE has determined that you can be expeditiously removed from the United States." (Pet. ¶ 10.)

This was no notice. Respondents' failure to provide notice of the reasons for revocation is a "significant omission because it prevented [Petitioner] from challenging the revocation. Respondents' regulations dictate that a detainee must be apprised of the specific reasons for revoking his supervised release so that he can present rebuttal evidence and argument at an informal interview." Por M., 2026 WL 776865, at (citing 8 C.F.R. § 241.13(i)(3)); Sarail A., 803 F. Supp. 3d at 781.

Moreover, Respondents allude to the existence of the required "prompt" informal interview, which does not suffice. (See Van Der Veek Decl. ¶ 13 ("On January 24, 2026, ICE ERO completed the served Notice of revocation . . . and the informal interview.").) Petitioner, however, states there was no interview and

the Court has adopted that statement as fact in this case. (Reply at 2.) Respondents were ordered to include exhibits that supported their case, which, obviously included documentation of the alleged interview, and failed to do so. Accordingly, Respondents have failed to establish that the interview took place. Respondents' failure to follow their own regulations in arresting and detaining Petitioner deprived him of an opportunity to mount a defense, and that deprivation establishes grounds to release him. Por M., 2026 WL 776865, at *4 (citing Sarail A., 803 F. Supp. 3d at 781-84 (granting habeas petition based, in part, on government's failure to provide adequate notice of the reasons for revocation)); Dusan C. v. Bondi, No. 26-cv-620 (JRT/ECW), 2026 WL 458128, at *4 (D. Minn. Feb. 13, 2026) (same based on no notice), R&R adopted, 2026 WL 465534 (D. Minn. Feb. 18, 2026).

**b) Changed Circumstances**

> In general, a habeas petitioner bears the burden of showing that their detention violates the law. However, courts in this jurisdiction have concluded that 8 C.F.R. § 241.13(i)(2) places the burden on the government to establish that changed circumstances justify a non-citizen's re-detention. . . . As one court has explained, this requirement is consistent with the default rule that the burden falls on the party who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion. As it is the government who seeks to change the state of affairs by re-detaining Petitioner, it is the

> government who bear[s] the burden to establish the changed circumstances that justify re-detention.

Dusan C., 2026 WL 458128, at *4 (citations omitted).

In this case, the January 24, 2026 Notice of Revocation of Release purportedly stated that "changed circumstances" existed such that "ICE has determined that you can be expeditiously removed from the United States" pursuant to 8 C.F.R. § 241.13. (Pet. ¶ 10; Van Der Vaart Decl. ¶ 11.) ICE "believed that country conditions changed and removal could be effected." (Van Der Vaart Decl. ¶ 11.) The Court has not seen these documents, which is unusual. It only has the parties' filings before it. The Court does note, however, that glaringly missing from Respondents' filing is any further explanation as to what country conditions have changed and how removal can now be affected.

Petitioner is a citizen of Palestine. He has maintained that this is his country of citizenship throughout this entire ordeal, despite ICE's attempts to sometimes call him a citizen of Jordan for no reason that the Court can discern. (See Docs. 2-1 (2013 F-1 visa (noting "Palestine" as country of citizenship); 2-3 at 4 (ICE alleges Petitioner is a native of Jordan and a citizen of stateless); 2-4 (Petitioner corrects this statement to "Born in Israel Deny, Israel." [Did not change "citizen of stateless"]); 2-5 (2018 order of removal to Palestine or in the

alternative to Jordan); Doc. 2-10 (1-130 Petition for Alien Relative (Gov. listing Petitioner's country of birth as Jordan).)

Petitioner argues that removal to Palestine is not only complicated, but almost impossible. The Court agrees. First, political barriers exist because Palestine is not a fully-sovereign state and entry to Palestine is largely controlled by Israel—particularly for the West Bank and Gaza Strip. (Pet. ¶ 87.) Second, logistical barriers abound that make actual removal to Palestine less likely than it was in 2018, even impossible: lack of recognized passports, travel documents, the ongoing war with Israel, and the new regional conflict with Iran. (Id. ¶ 88.) ICE has not even attempted to explain why these barriers are no longer relevant.

The only possible change in circumstances since Petitioner's 2018 release from custody has been a relentless bombing campaign by Israel and an even wider military conflict in the Middle East. On February 27, 2026, the United States State Department issued a travel advisory telling Americans "**Do Not Travel to:** Gaza due to **terrorism** and **armed conflict**." Travel.State.Gov, Isreal, the West Bank and Gaza Travel Advisory, available at https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/israel-west-bank-and-gaza-travel-advisory.html (last visited April 13, 2026) (emphasis in original). The

Court will not sanction removal of a noncitizen to a country our own government considers too dangerous for Americans, especially when "removal" seems only to be some sort of weird ICE pipedream under the facts of this case.

The Court finds that ICE has not seriously tried to meet its burden to show "changed circumstances" despite its oddly strong language stating that "ICE has determined that you can be expeditiously removed from the United States" pursuant to 8 C.F.R. § 241.13. See, e.g., Roble, 803 F. Supp. 3d at 773 (government did not meet burden when it "provided 'scant information' about what 'assistance' it ha[d] requested from ICE headquarters for a third country removal, and it [ ] provided no information about the anticipated outcome of requesting that assistance"); Dusan C., 2026 WL 458128, at *4 (government did not meet burden to establish changed circumstances when it merely stated that Polish Embassy had been contacted regarding travel document and possibility of significant likelihood of removability in foreseeable future) (gathering cases). The cited cases provided the court with more information regarding changed circumstances than Respondents provide in this case. Respondents have not even identified an intended country of removal for Petitioner, let alone begun the requisite processes to remove him there.

Here, the Court finds that Respondents "detained the petitioner first, and asked questions later. [But] [t]hat's not how it works." Vang, 2026 WL 458195, at *3. Under § 241.13, "it is the government's burden to show a change in circumstance before revoking an order of supervision and detaining a person indefinitely." Id. (emphasis in original). Under these circumstances, release is the proper relief.

**3. Attempt to Remove to a Third Country**

Notwithstanding the above discussion, Petitioner argues that should ICE attempt to remove him to a third country (i.e., Israel or Jordan), ICE should be enjoined from doing so without providing Petitioner an opportunity to be heard before an immigration judge. (Pet. ¶¶ 125-35.) Petitioner asserts that "while attempting to remove Petitioner to Palestine, Respondents also sought to remove him to Israel or Jordan." (Id. ¶ 126.) The Court admits that much of Petitioner's lengthy briefing in this case was difficult to follow, but this statement, standing alone without any apparent support, is particularly bewildering. The Court is unsure if Petitioner is merely stating that Respondents attempted to remove him to these alternate countries in 2018, something that is supported by the record, or if this is what Respondents are currently attempting to do, something the Court sees no documentation for. (See id. ¶ 82 (stating that Petitioner attempted to

secure the return of travel documents from Israel and to obtain travel documents from Jordan); Doc. 2-5 (June 7, 2018 Order of Removal to Palestine or in the alternative Jordan).)

This area of the law is governed by 8 U.S.C. § 1231(b), which provides, in pertinent part, the following:

> **§ 1231. Detention and removal of aliens ordered removed**
>
> **(b) Countries to which aliens may be removed**
>
> . . .
>
> **(3) Restriction on removal to a country where alien's life or freedom would be threatened**
>
> **(A) In general**
> Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.
>
> . . .
>
> **(C) Sustaining burden of proof; credibility determinations**
> In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title.

8 U.S.C. § 1231(b)(3)(A),(C) (emphasis in original). "A noncitizen must be given sufficient notice of a country of deportation that, given his capacities and

circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing, inter alia, Mathews v. Eldridge, 424 U.S. 319, 349 (1976)).

The above makes clear that "ICE's authority to remove a noncitizen to a country not specified in the immigration judge's order of removal is contingent on its compliance with § 1231(b): it therefore has an affirmative obligation to make a determination regarding a noncitizen's claim of fear before deporting him. Thus, both the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." Id. at 1010.

Therefore, to the extent Respondents intend to pursue removal to a third country in the future, the Court will enjoin them from doing so without notice to Petitioner and an opportunity for Petitioner to be heard before an immigration judge pursuant to protections outlined in 8 U.S.C. § 1231(b)(3).

## IV. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Petitioner Mohammad J. N.'s Petition for Writ of Habeas Corpus **[Doc. 2]** is **GRANTED as follows**:

   a. Respondents are ordered to immediately arrange for release of Petitioner at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

   b. Respondents are ordered to immediately return all of Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken, such as a driver's license, immigration papers, passports, cell phones, and keys; and

   c. Respondents are enjoined from imposing any conditions on Petitioner's release other than the conditions in his preexisting Order of Supervision.

2. To the extent Respondents may intend to remove Petitioner to a third country in the future, Respondents are enjoined from doing so without providing Petitioner notice and an opportunity to be heard before an immigration judge pursuant to the protections detailed in 8 U.S.C. § 1231(b)(3).

3. Within 48 hours of the date of the filing of this Order, Respondents are ordered to file a status update with the Court reporting on their compliance with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 15, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court